PD-0100&0101-15

P0100-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/30/2015 8:24:28 AM
Accepted 2/4/2015 9:16:04 AM
ABEL ACOSTA
CLERK

PD _____

### IN THE COURT OF CRIMINAL APPEALS

### OF TEXAS

_____

**OSMIN PERAZA,**
*Appellant*,

**v.**

**THE STATE OF TEXAS,**
*Appellee.*

_____

On Petition for Discretionary Review from the First Court of Appeals in
Nos. 01-12-00690-CR and 01-12-00691-CR
affirming the conviction in cause numbers 1305483 and 1305439,
From the 184th District Court of Harris County, Texas

_____

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

_____

ORAL ARGUMENT NOT REQUESTED

FILED IN
COURT OF CRIMINAL APPEALS

February 4, 2015

ABEL ACOSTA, CLERK

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**JANI MASELLI WOOD**
Assistant Public Defender
Harris County, Texas
TBN. 00791195
1201 Franklin Street, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278

Counsel for Appellant
January 25, 2015

## IDENTITY OF PARTIES AND COUNSEL

APPELLANT:        Osmin Peraza
              TDCJ-ID# 01798603
              Garza West
              4250 Highway 202
              Beeville, TX 78102

TRIAL PROSECUTOR:     Ms. Sarah Bruchmiller
              Assistant District Attorney
              Harris County, Texas
              1201 Franklin, 6th Floor
              Houston, Texas 77002

APPELLATE PROSECUTOR:   Jessica Akins
              Assistant District Attorney
              Harris County, Texas
              1201 Franklin St., 13th Floor
              Houston, TX 77002

DEFENSE COUNSEL AT TRIAL:  Ms. Emily Detoto
              3000 Smith, Suite 4
              Houston, Texas 77006

PRESIDING JUDGE:     Hon. Jan Krocker
              184th District Court, Harris County
              1201 Franklin, 17th floor
              Houston, Texas 77002

DEFENSE COUNSEL ON APPEAL: Jani Maselli
              Assistant Public Defender
              Harris County, Texas
              1201 Franklin, 13th Floor
              Houston, Texas 77002

# TABLE OF CONTENTS

**PAGE**

Identity of Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Ground for Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Reason for Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument

    The Court of Appeals erred in determining there was no evidence Mr. Peraza's guilty pleas were coerced. The trial attorney stated on the record that Mr. Peraza was pressured into making his plea. Did the Court of Appeals err in holding that the trial court did not abuse its discretion in refusing to allow Mr. Peraza to withdraw his guilty plea?. . . . . 6
        *Court of Appeals' Opinion.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        *Involuntary plea.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        *Standard of Review.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        *The record is silent as to the plea colloquy.* . . . . . . . . . . . . . . . . . . . . . . . . . 10

Prayer for Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Attached

INDEX OF AUTHORITIES

PAGE

**Cases**:

*Boykin v. Alabama*,
 395 U.S. 238 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Brady v. United States*,
 397 U.S. 742 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Carranza v. State*,
 980 S.W.2d 653 (Tex. Crim. App. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ex Parte Lewis*,
 587 S.W.2d 697 (Tex. Crim. App. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Fisher v. State*,
 104 S.W.3d 923 (Tex. App.-Houston [14th Dist.] 2003, no pet.). . . . . . . . 10

*Houston v. State*,
 201 S.W.3d 212 (Tex. App.-Houston [14th Dist.] 2006, no pet.) . . . . . . . . 11

*Jackson v. State*,
 590 S.W.2d 514 (Tex. Crim. App. [Panel Op.] 1979). . . . . . . . . . . . . . . . . 10

*Martinez v. State*,
 981 S.W.2d 195 (Tex. Crim. App.1998) . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*McWherter v. State*,
 571 S.W.2d 312 (Tex. Crim. App.1978). . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Peraza  v. State*,
 No. 01-12-00690-CR, No. 01-12-00691-CR, 2014 WL 7476214
 (Tex. App. – Houston [1st Dist.] December 30, 2014, no pet. history).passim

*North Carolina v. Alford*,
      400 U.S. 25 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Statutes and Rules**

TEX. PENAL CODE § 22.021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

 TEX. R. APP. P. 66.3(C).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Other References**

Bryan A. Garner, *Garner's Dictionary of Legal Usage* 10 (Oxford Univ. Press, 3d Ed.
2011)(1987).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

W. Wendell Hall, *Hall's Standard of Review in Texas*, 42 St. Mary's L.J. 3, 16 (2010).  9

STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested.

STATEMENT OF THE CASE

This is an appeal from two separate cause numbers: 1305438 and 1305439.[1]

Mr. Peraza pled guilty to two different felony offenses of aggravated sexual assault of

a child. (C.R.1 at 59; C.R.2 at 61). *See* TEX. PENAL CODE § 22.021. The Court took

the plea under advisement and a PSI hearing was held. (C.R.1 at 144; C.R.2 at 146).

At the PSI hearing, Mr. Peraza sought to withdraw his guilty plea, but the court denied

the request. (2 R.R. at 6-9). After the presentation of witnesses, the court sentenced

Mr. Peraza to 25 years imprisonment on each case to run concurrently. (C.R.1 at 73;

C.R.2 at 75; 2 R.R. at 39).

Motions for new trial and motions in arrest of judgment were filed in both

cases on August 13, 2012. (C.R.1 at 91, 116; C.R.2 at 94, 120). On August 16, 2012,

the motions were presented and the court denied a hearing and denied the motions

that same day. (C.R.1 at 113-15, 139-41; C.R.2 at 117-19, 143-45). Notice of appeal

was timely filed. (C.R.1 at 78; C.R.2 at 80).

---

[1] Cause Number 1305438 [01-12-00690-CR] will be designated as C.R.1 and Cause Number 1305439 [01-12-00691-CR] will be designated as C.R.2. There is only one reporter's record for both cause numbers.

STATEMENT OF THE PROCEDURAL HISTORY

In a published opinion, the First Court of Appeals affirmed Mr. Peraza's conviction, but modified the judgment as to certain court costs. *Peraza v. State*, No. 01-12-00690-CR, No. 01-12-00691-CR, 2014 WL 7476214 (Tex. App. – Houston [1st Dist.] December 30, 2014, no pet. history). There was a concurring and dissenting opinion by Justice Brown concurring to the affirming of the conviction and dissenting to the modification of the judgment. *Id.* No motion for rehearing was filed. This petition is timely if filed on or before January 30, 2015.

GROUND FOR REVIEW

The Court of Appeals erred in determining there was no evidence Mr. Peraza's guilty pleas were coerced. The trial attorney stated on the record that Mr. Peraza was pressured into making his plea. Did the Court of Appeals err in holding that the trial court did not abuse its discretion in refusing to allow Mr. Peraza to withdraw his guilty plea?

REASON FOR REVIEW

The First Court of Appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals or the Supreme Court of the United States. TEX. R. APP. P. 66.3(C).

STATEMENT OF FACTS RELATIVE TO GROUND RAISED

Mr. Peraza pled guilty to two different indictments - both alleging aggravated sexual assault of a child under 14. (C.R.1 2, 59; C.R.2 at 2, 75). The docket sheets reflect that on May 3, 2012:

> Defendant waived arraignment and entered a plea of GUILTY. Defendant, appearing to be sane, is admonished by the Court of the consequences of said plea. Penalty recommendation of the State is: WITHOUT AN AGREED RECOMMENDATION/PSI HEARING. The Court found sufficient evidence of guilt but made no finding of guilt. RESET FOR SENTENCING.

(C.R.1 at 144; C.R.2 at 146). At the start of the PSI hearing, the following colloquy occurred:

-3-

MS. DETOTO:  On behalf of the defendant, Mr. Osmin Peraza, I am requesting that his guilty plea to the offenses be withdrawn. According to the Presentence report and my conversations with Mr. Peraza, Mr. Peraza was coerced into confessing to this offense. He, according to the offense report, did a polygraph; and they informed him that he failed. Immediately thereafter, coincidentally, he confesses to the offenses.

It's my opinion that that -- the initial confession was coerced; and but for that act of coercion on the part of law enforcement, Mr. Peraza never would have pled guilty to the offense on the trial date. If you looked at the date that his guilty pleas took place, it happened to be while the jury was on the way on the trial date, which leads further -- which is further evidence that his guilty pleas were coerced. And as further evidence that –

THE COURT: I'm sorry. You're saying that having the jury on the way is a form of coercion?

MS. DETOTO: I am, Your Honor. And that's why Mr. Peraza felt pressured to make that decision.

Thirdly, Your Honor, the PSI, in his version of the offense, he denies the offense; and so, that would be evidence that his guilty pleas were not freely and voluntarily made. So, I'm asking you for permission to withdraw his guilty pleas in both offenses.

I note -- I have a feeling that somewhere down the road, if we do not do that today, a Motion for New Trial would be filed, alleging the very same things that I'm alleging. We might have to have a hearing on that Motion for New Trial, and I would just hate for us to have to do this all over again, for the victim's sake.

So, I'm respectfully asking that the guilty pleas be withdrawn. I have had cases that have lasted a lot longer than Mr. Peraza's case. We just tried one in here, and I don't think that -- my request to withdraw the guilty pleas are not made for the purposes of delay, but so justice can be actually served in this case.

He didn't get his day in court. I know hindsight is 20/20, but he has asked me to ask you to give him permission to withdraw the guilty pleas.

THE COURT: Thank you very much. Does the State wish to be heard on this?

MS. BRUCHMILLER: Your Honor, he did get his day in court. The case was originally filed on May 7, 2011; and Mr. Peraza pled guilty to both cases on May 3, 2012. There was ample opportunity. If he wanted to go to trial, he could have pled not guilty; and we could have had a trial. Both sides were ready on the day of trial. He did meet with an officer when this case was being investigated back in May of 2012; and during the time with that officer, he confessed to committing this offense on two different occasions. I think he had counsel who had been with the case, I believe, from the beginning, for several months at least, who was working with us regarding our plans as far as whether or not we were going to go to trial. There were several cases set that day; other defendants, as well. So, I don't believe there was any coercion on the part of the Court; and certainly I never talked to the defendant. But I feel like his plea was voluntarily made, and you asked him that during the -- sorry, sorry -- during the time of his plea.

THE COURT: Thank you. I will note that I would not have taken his plea, Mr. Peraza's plea, if I had not believed at the time he was entering it freely and voluntarily. Your motion is denied.

(2 R.R. at 6-9).

During this exchange, the prosecutor averred that Mr. Peraza had confessed to Officer Montoya. (2 R.R. at 10). The PSI report, which the court had a copy of,

unequivocally stated Mr. Peraza denied the offense and stated the complainant was lying. (3 R.R. SX-1 PSI page 2, 5).

During the PSI hearing, the father of the complainant testified he was very upset that Mr. Peraza had sexually assaulted his daughter. (2 R.R. at 12-20). Mr. Peraza's wife testified she did not believer her husband committed the assaults and was a good man and good father. (2 R.R. at 26-29).

The trial court sentenced Mr. Peraza to 25 years imprisonment on each case, to run concurrently. (2 R.R. at 39).

ARGUMENT

The Court of Appeals erred in determining there was no evidence Mr. Peraza's guilty pleas were coerced. The trial attorney stated on the record that Mr. Peraza was pressured into making his plea. Did the Court of Appeals err in holding that the trial court did not abuse its discretion in refusing to allow Mr. Peraza to withdraw his guilty plea?

*Court of Appeals' Opinion*

The Court of Appeals held that despite there being no record of the guilty plea to support Mr. Peraza's case, there was sufficient evidence the plea was voluntarily made:

> The record, however, contains no evidence that anyone coerced appellant into pleading guilty. Appellant voluntarily submitted to a polygraph test, and neither his failure of the polygraph test, nor the immediacy of a jury trial, constituted a threat, misrepresentation, or improper promise. Thus, appellant has not overcome the presumption that he knowingly and voluntarily entered his pleas.

*Peraza*, 2014 WL 7476214, at *3. The Court of Appeals determined the statements on the record by Mr. Peraza's trial attorney insufficient to support the contention that the pleas were involuntary. This is classically unfair when the absence of evidence to support the plea is disregarded. *See Peraza*, 2014 WL 7476214, at *2 (explaining "[h]ere, the absence of a recorded plea colloquy, alone, does not overcome the presumption that appellant was properly admonished and understood the consequences and nature of his pleas.).

*Involuntary plea*

In *Brady v. United States*, 397 U.S. 742 (1970), "[t]he standard as to the voluntariness of guilty pleas" was set forth as follows:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats, ... misrepresentations (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecution's business (e.g., bribery).

*See also*, *Ex Parte Lewis*, 587 S.W.2d 697, 700 (Tex. Crim. App. 1979) (requirement of due course of law extends to guilty pleas).

The likelihood of loss of liberty based on a plea of guilty "demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969). It is axiomatic that a guilty plea must be voluntary and intelligent to satisfy due process requirements. *Boykin*, 395 U.S. at 242-43. As the Court opined:

> a plea of guilty is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, ... might be a perfect cover-up of unconstitutionality.

*Boykin*, 395 U.S. at 242-43, 89 S.Ct. at 1712. The test to determine the validity of a guilty or no contest plea is "whether the plea represents a voluntary and intelligent

choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Due process requires that a defendant be both advised of and understand the direct consequences of a plea. *Brady*, 397 U.S. at 755. The Supreme Court, citing Judge Tuttle of the Fifth Circuit, stated the standard as to the voluntariness of guilty pleas:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by ... misrepresentation ... 242 F.2d at page 115. (emphasis supplied).

*Brady*, 397 U.S. at 755. (footnotes omitted). In *Carranza v. State*, 980 S.W.2d 653, 656 (Tex. Crim. App. 1998), this Court reasoned:

> ... if a defendant's guilty plea is not equally knowing and voluntary, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. (emphasis supplied).

*Carranza*, 980 S.W.2d at 656.

The record is silent as to what Mr. Peraza was told or explain on the day of his plea. The record is not silent regarding his desire to withdraw his guilty plea before he was found guilty and sentenced. Constitutional protections such as this, while reviewed under an abuse of discretion, are far too valuable to disregard.

-9-

Mr. Peraza wanted to withdraw his guilty plea. (2 R.R. at 6-9). The trial court's summary dismissal of the request was an abuse of discretion.

*Standard of Review*

Where a defendant decides to withdraw his guilty plea after the trial judge takes the case under advisement or pronounces judgment, the withdrawal of such plea is within the sound discretion of the trial court. *McWherter v. State*, 571 S.W.2d 312 (Tex. Crim. App.1978).

The definition of an abuse of discretion encompasses myriads of cases and law reviews, but has been explained as:

> "The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action." Rather, a trial court abuses its discretion if its decision is "arbitrary, unreasonable, and without reference to [any] guiding [rules and] principles" or is "'so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.'" (footnotes omitted).

W. Wendell Hall, *Hall's Standard of Review in Texas*, 42 St. Mary's L.J. 3, 16 (2010). In *Garner's Dictionary of Legal Usage*, it is defined as:

> the phrase denoting a lenient standard of reviewing a lower court's judgment, signifies "no single level of deference or scrutiny." The "variability of the phrase is not hopeless. It just means that generalizations about the standard may not be helpful. *Abuse* in this context is not pejorative; the word here is wholly unrelated to the meaning of the term when used in common parlance."

-10-

Bryan A. Garner, *Garner's Dictionary of Legal Usage* 10 (Oxford Univ. Press, 3d Ed. 2011)(1987).  The trial court's refusal to even consider the withdrawal based upon an unrecorded plea colloquy that occurred months earlier was unreasonable.  The court's explanation that "I will note that I would not have taken his plea, Mr. Peraza's plea, if I had not believed at the time he was entering it freely and voluntarily" is stout, but unreasonable. (2 R.R. at 9).

The court failed to consider Mr. Peraza's assertion of innocence.  The court failed to consider any reason for the withdrawal, merely relying upon a belief that the court never takes an involuntary plea.  That reasoning is "without reference to [any] guiding [rules and] principles."

*The record is silent as to the plea colloquy.*

The passing of a case for a PSI report is considered "[taking] the case under advisement." *Jackson v. State*, 590 S.W.2d 514, 515 (Tex. Crim. App. [Panel Op.] 1979).

A judge is free to make any finding based on the evidence regardless of the plea; withdrawal of a guilty plea is not required even when evidence in a PSI raises an issue of a defendant's innocence. *Fisher v. State*, 104 S.W.3d 923, 924 (Tex. App.-Houston [14th Dist.] 2003, no pet.).  Typically, proper admonishments by a trial court establish prima facie proof that a guilty plea was entered knowingly and

voluntarily. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App.1998); *Houston v. State*, 201 S.W.3d 212, 217 (Tex. App.-Houston [14th Dist.] 2006, no pet.).

In the case *sub judice*, the plea was not taken by a court reporter. There is no evidence to support the plea colloquy was correct. What is present in the record is an attorney requesting that her client be able to withdraw his plea. The attorney made an appropriate argument that Mr. Peraza felt coerced into pleading guilty. The PSI (despite the State's assertions of a confession) establish that Mr. Peraza repeatedly denied the offense.

In this case, the burden has shifted to Mr. Peraza to show he pleaded guilty without understanding the consequences of his plea and, consequently, suffered harm. *Houston*, 201 S.W.3d at 217. The PSI hearing supports the proposition that Mr. Peraza wished to withdraw his plea. And the voluntariness of a defendant's plea should never be so summarily dismissed with the statement by the court that the plea would not have been taken had it not been "freely and voluntarily" entered. (2 R.R. at 9).

PRAYER FOR RELIEF

For the reasons states above, Mr. Peraza prays that this Court grant his petition.

Respectfully submitted,

*Jani Maselli Wood*

_____

JANI J. MASELLI WOOD
Assistant Public Defender
Harris County, Texas
Jani.Maselli@pdo.hctx.net
TBN. 00791195
1201 Franklin Street, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278

Attorney for Appellant
Osmin Peraza

## CERTIFICATE OF SERVICE

Pursuant to Tex. R. App. Proc. 9.5, this certifies that on January 26, 2015, a copy of the foregoing was emailed to Lisa McMinn, State Prosecuting Attorney, and the Harris County District Attorney's Office through texfile.com at the following address:


Jessica Akins
Assistant District Attorney
1201 Franklin Street, 6th Floor
Houston, TX 77002
akins_jessica@dao.hctx.net

Lisa McMinn
Lisa.McMinn@SPA.texas.gov

*Jani Maselli Wood*

_____
JANI J. MASELLI WOOD

## CERTIFICATE OF COMPLIANCE

Pursuant to proposed Rule 9.4(i)(3), undersigned counsel certifies that this petition complies with the type-volume limitations of TEX. R. APP. PROC. 9.4(I)(2)(D).

1.      Exclusive of the portions exempted by TEX. R. APP. PROC. 9.4 (I)(1), this petition contains 3393 words printed in a proportionally spaced typeface.

2.      This petition is printed in a proportionally spaced, serif typeface using Garamond 14 point font in text and Garamond 14 point font in footnotes produced by Corel WordPerfect software.

3.      Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in *Tex. R. App. Proc. 9.4(j)*, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

*Jani Maselli Wood*

_____

JANI J. MASELLI WOOD

**Appendix A**

Opinion *Peraza v. State*

2014 WL 7476214
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED
FOR PUBLICATION IN THE PERMANENT LAW
REPORTS. UNTIL RELEASED, IT IS SUBJECT TO
REVISION OR WITHDRAWAL.

OPINION

Court of Appeals of Texas,
Houston (1st Dist.

Osmin Peraza, Appellant
v.
The State of Texas, Appellee
NO. 01–12–00690–CR, NO. 01–12–00691–CR |
Opinion issued December 30, 2014

On Appeal from the 184th District Court, Harris County,
Texas, Trial Court Case Nos. 1305438 and 1305439

**Attorneys and Law Firms**

Jani Maselli, Assistant Public Defender, Houston, TX, for
appellant.

Devon Anderson, District Attorney, Jessica Akins, Assistant
District Attorney, Houston, TX, for State.
Panel consists of Justices Jennings, Sharp, and Brown.

**OPINION**

Terry Jennings, Justice

**\*1** Appellant, Osmin Peraza, without an agreed punishment
recommendation from the State, pleaded guilty to two
separate offenses of aggravated sexual assault of a child less
than fourteen years of age.[1] The trial court assessed his
punishment at confinement for twenty-five years for each
offense, with the sentences to run concurrently. In four issues,
appellant contends that each judgment contains an erroneous
and unsupported "Sheriff's Fee" and an unconstitutional
"DNA Record Fee," the trial court erred in not permitting him
to withdraw his guilty pleas, and it erred in denying him a
hearing on his motions for new trial and in arrest of judgment.

We modify the trial court's judgments and affirm as modified.

**Background**

A Harris County Grand Jury issued a true bill of indictment,
accusing appellant of committing two separate offenses of
aggravated sexual assault of a child less than fourteen years
of age. After his arrest, appellant failed a polygraph test and
then admitted to a police officer that he had committed the
offenses. He subsequently pleaded guilty to committing the
offenses. In his plea papers, appellant admitted that he had
intentionally and knowingly caused both the mouth of the
complainant, a person younger than fourteen years of age, to
contact his sexual organ and the sexual organ of the
complainant to contact his sexual organ. In each case,
appellant also signed written admonishments, representing
that he was mentally competent, understood the nature of the
charge against him and the consequence of his plea, and
freely and voluntarily pleaded guilty to the offense.
Appellant's attorney signed the plea papers, affirming that she
believed that appellant had executed his pleas knowingly,
voluntarily, and after a full discussion of the consequences of
his pleas. The trial court found sufficient evidence of
appellant's guilt in both cases and that appellant had entered
his guilty pleas freely, knowingly, and voluntarily. And it
admonished appellant of his legal rights, accepted his guilty
pleas, and ordered a presentence investigation in each case.

At the sentencing hearing, appellant moved to withdraw his
guilty pleas, arguing that they had been coerced. After finding
that appellant had pleaded guilty freely and voluntarily, the
trial court denied his motion.

In its judgment of conviction in each case, the trial court
ordered appellant to pay $634 in court costs, including, as
part of the "Sheriff's Fee," a $50 charge for "serving capias"[2]
and a $5 charge for an arrest without a warrant or capias.[3] The
trial court also included within the $634 of court costs a $250

"DNA Record Fee."[4] Appellant then filed his motions for new trial and in arrest of judgment, which the trial court denied without a hearing.

### Withdrawal of Guilty Pleas

**\*2** In his first issue, appellant argues that the trial court erred in denying his motion to withdraw his guilty pleas because he did not enter the pleas voluntarily.

A defendant may withdraw his guilty plea at any time before judgment is pronounced or the trial court takes the plea under advisement. *Jackson v. State,* 590 S.W.2d 514, 515 (Tex.Crim.App.1979); *State v. Ellis,* 976 S.W.2d 789, 792 (Tex.App.–Houston [1st Dist.] 1998, no pet.). Once a plea has been taken under advisement or guilt has been adjudicated, however, a request to withdraw the plea is untimely, and the withdrawal of the plea is within the sound discretion of the trial court. *Jackson,* 590 S.W.2d at 515; *Ellis,* 976 S.W.2d at 792. After the trial court has admonished the defendant and received the plea and evidence, the passage of the case for a presentence investigation constitutes taking the case under advisement. *See Jackson,* 590 S.W.2d at 514–15; *Wissinger v. State,* 702 S.W.2d 261, 262–63 (Tex.App.–Houston [1st Dist.] 1985, pet. ref'd). Because appellant did not request that his guilty pleas be withdrawn until after the trial court had taken his cases under advisement, we review the trial court's denial of his motion to withdraw his pleas for an abuse of discretion.

A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Lyles v. State,* 850 S.W.2d 497, 502 (Tex.Crim.App.1993); *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex.Crim.App.1990). To show that the trial court abused its discretion when it refused to allow appellant to withdraw his guilty pleas, he must show that "the trial court's rulings lie outside the zone of reasonable disagreement." *Jagaroo v. State,* 180 S.W.3d 793, 802 (Tex.App.–Houston [14th Dist.] 2005, pet. ref'd).

Appellant first argues that there is no evidence that he voluntarily entered his pleas because there is no record of the trial court's oral discussion with him of his legal rights. We consider the entire record in determining whether a plea was entered voluntarily. *Fimberg v. State,* 922 S.W.2d 205, 207 (Tex.App.–Houston [1st Dist.] 1996, pet. ref'd). A prima facie

presumption that a defendant voluntarily and knowingly pleaded guilty arises when the trial court finds that the defendant was properly admonished. *See Martinez v. State,* 981 S.W.2d 195, 197 (Tex.Crim.App.1998); *see also* Tex.Code Crim. Proc. Ann. art. 26.13(b) (Vernon Supp.2014) (guilty pleas may not be accepted unless mentally competent defendant enters plea freely and voluntarily). When the record presents a prima facie showing that the plea was entered voluntarily and knowingly, "the burden shifts to the defendant to show that he entered the plea without understanding the consequences." *Arreola v. State,* 207 S.W.3d 387, 391 (Tex.App.–Houston [1st Dist.] 2006, no pet.).

Here, the absence of a recorded plea colloquy, alone, does not overcome the presumption that appellant was properly admonished and understood the consequences and nature of his pleas. *See Dusenberry v. State,* 915 S.W.2d 947, 949–52 (Tex.App.–Houston [1st Dist.] 1996, pet. ref'd) (concluding guilty plea voluntary because defendant received written admonishments of legal rights). Although the plea colloquy was not recorded, appellant received written admonishments of his legal rights, affirmed that he was mentally competent and understood the nature of the charges against him and the consequences of his pleas, and agreed that he freely and voluntarily pleaded guilty in each case. Further, the plea papers show that appellant's trial counsel and the trial court both verified that appellant entered his guilty pleas freely, knowingly, and voluntarily, after having fully discussed his pleas and their consequences with counsel. On this record, there is no evidence that appellant was not properly admonished or failed to understand the consequence or nature of his pleas.

**\*3** In regard to appellant's assertion that his guilty pleas were coerced, we note that "a plea is involuntary when it is 'induced by threats, misrepresentations, or improper promises' " by the prosecutor, judge, or law enforcement officials. *Rios v. State,* 377 S.W.3d 131, 136 (Tex.App.–Houston [1st Dist.] 2012, pet. ref'd) (quoting *Kniatt v. State,* 206 S.W.3d 657, 664 (Tex.Crim.App.2006)). Moreover, we presume the regularity of the judgments and proceedings, and appellant has the burden of overcoming this presumption. *Dusenberry,* 915 S.W.2d at 949.

Appellant presented no evidence that his guilty pleas were actually coerced. At his sentencing hearing, appellant's trial counsel suggested that appellant was coerced into pleading

guilty because the jury was "on the way" and appellant had failed a polygraph test immediately before admitting to a police officer that he had committed the sexual-assault offenses. The record, however, contains no evidence that anyone coerced appellant into pleading guilty. Appellant voluntarily submitted to a polygraph test, and neither his failure of the polygraph test, nor the immediacy of a jury trial, constituted a threat, misrepresentation, or improper promise. Thus, appellant has not overcome the presumption that he knowingly and voluntarily entered his pleas.

When appellant requested to withdraw his guilty pleas, the trial court had taken his cases under advisement and reset them for a punishment hearing. Because the trial court had already admonished appellant of his legal rights and he had already voluntarily pleaded guilty, his request to withdraw his pleas was untimely, and the trial court had discretion to accept or deny his motion. *See* Jackson, 590 S.W.2d at 515.

Accordingly, we hold that the trial court did not err in denying appellant's motion to withdraw his guilty pleas.

We overrule appellant's first issue.

### Court Costs for Arrest

In his second issue, appellant argues that the trial court's judgments are invalid because they each contain an erroneous and unsupported "Sheriff's Fee." Appellant asserts that, "[a]t the very least, the $50.00 Sheriff's Fee [for serving a capias] should be removed" from the $634 in court costs assessed against him in each judgment.

A criminal defendant must pay certain statutorily mandated costs and fees, which vary depending on the type of offense, the underlying facts, and the procedural history of the case. *See* Tex. Gov't Code Ann. § 102.021 (Vernon Supp.2014) (listing court costs upon conviction); Tex. Loc. Gov't Code Ann.. § 133.102 (Vernon Supp.2014) (same). The district court clerk must keep a record of each fee or cost charged for a service rendered in a criminal action or proceeding. Tex. Code Crim. Proc. Ann. art. 103.009(a)(1) (Vernon 2006). If a criminal action is appealed, an officer of the court must certify and sign a bill of costs and send it to the appellate

court. Tex. Code Crim. Proc. Ann. art. 103.006 (Vernon 2006).

Court costs do not constitute part of the guilt or sentence of a criminal defendant—"they are 'a nonpunitive recoupment of the costs of judicial resources expended in connection with the trial of a case.' " *Johnson v. State,* 423 S.W.3d 385, 390 (Tex.Crim.App.2014) (quoting *Armstrong v. State,* 340 S.W.3d 759, 767 (Tex.Crim.App.2011)). Therefore, we review the assessment of court costs to determine whether there is a basis for the cost; we do not undertake an evidentiary-sufficiency review. *Id.*

**\*4** Here, the trial court clerk's bills of costs each include a $50 charge for "serving capias" as part of the "Sheriff's Fee" assessed against appellant. *See* Tex. Code Crim. Proc. Ann. art. 102.011(a)(2) (Vernon Supp.2014) ("A defendant convicted of a felony or a misdemeanor shall pay ... $50 for executing or processing an issued arrest warrant, capias, or capias pro fine...."). They also include a $5 charge for an arrest without a warrant/capias. *See id.* art. 102.011(a)(1) (authorizing $5 charge for arrest without warrant). The State agrees that the records do not support the $50 charge for "serving capias." And the records contain no basis to conclude that capiases were issued for appellant's arrest.

The proper remedy for such an unsupported fee is for the appellate court to modify the judgment, not to grant a new trial as appellant has requested. *See* Tex. R. App. P. 43.2(b); *French v. State,* 830 S.W.2d 607, 609 (Tex.Crim.App.1992) (agreeing "appellate court has authority to reform a [trial court] judgment to ... make the record speak the truth when the matter has been called to its attention by any source"); *see also Nolan v. State,* 39 S.W.3d 697, 698 (Tex.App.–Houston [1st Dist.] 2001, no pet.) ("An appellate court has the power to correct and reform a trial court judgment 'to make the record speak the truth when it has the necessary data and information to do so ....' " (quoting *Asberry v. State,* 813 S.W.2d 526, 529 (Tex.App.–Dallas 1991, pet. ref'd))).

Because there is no basis in the record to support the $50 charge for "serving capias" assessed against appellant as part of the "Sheriff's Fee" in both of appellant's cases, we modify each judgment to delete the $50 charge from the court costs.

We sustain appellant's second issue.

## Constitutionality of "DNA Record Fee"

In his third issue, appellant argues that the trial court's judgments are invalid because they each assess an unconstitutional $250 "DNA Record Fee." *See* Tex. Code Crim. Proc. Ann. art. 102.020(a)(1) (Vernon Supp.2014) (authorizing collection of $250 from persons convicted of offenses listed in Texas Government Code section 411.1471(a)(1)). Appellant asserts that the fee required by article 102.020 is facially unconstitutional under the separation of powers clause of the Texas Constitution. *See* Tex. Const. art. II, § 1.

Whether a statute is facially constitutional is a question of law that we review de novo. *Ex Parte Lo,* 424 S.W.3d 10, 14 (Tex.Crim.App.2013); *Ma loney v. State,* 294 S.W.3d 613, 626 (Tex.App.–Houston [1st Dist.] 2009, pet. ref'd). When reviewing a constitutional challenge, we "presume that the statute is valid and that the legislature was neither unreasonable nor arbitrary in enacting it." *Curry v. State,* 186 S.W.3d 39, 42 (Tex.App.–Houston [1st Dist.] 2005, no pet.); *see also State v. Rosseau,* 396 S.W.3d 550, 557 (Tex.Crim.App.2013). If the statute can be construed in two different ways, one of which sustains its validity, we apply the interpretation that sustains its validity. *Maloney,* 294 S.W.3d at 625.

The party challenging the statute bears the burden of establishing the statute's unconstitutionality. *Rosseau,* 396 S.W.3d at 557; *Curry,* 186 S.W.3d at 42. "A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid."*Santikos v. State,* 836 S.W.2d 631, 633 (Tex.Crim.App.1992); *see also Rosseau,* 396 S.W.3d at 557. We "must uphold the challenged statute if it can be reasonably construed in a manner consistent with the legislative intent and is not repugnant to the Constitution." *Curry,* 186 S.W.3d at 42.

**\*5** Article 102.020(a)(1), titled "Costs Related to DNA Testing," provides that a defendant convicted of certain offenses, including aggravated sexual assault of a child less than fourteen years of age, "shall pay as a cost of court: $250 [upon] conviction...." Tex. Code Crim. Proc. Ann. art.

102.020(a)(1). Thirty-five percent of the revenue received from this "DNA Record Fee" is dedicated to the state highway fund, while sixty-five percent of the revenue is dedicated to the general revenue fund of the criminal justice planning account. *Id.* art. 102.020(h).

Appellant argues that the "DNA Record Fee" is an impressible tax collected by the judiciary, rather than a legitimate court cost, because revenue from this fee is dedicated to the state highway fund and criminal justice planning account and, thus, used for services that are neither necessary nor incidental to the trial of a criminal case. In support of his argument, appellant principally relies on *Ex Parte Carson,* 143 Tex.Crim. 498, 159 S.W.2d 126 (1942).

In *Carson,* the Texas Court of Criminal Appeals considered whether it was constitutionally permissible to impose a $1 fee as a court cost in all cases filed in counties with more than eight district courts or more than three county courts at law. 159 S.W.2d at 127. The revenue collected from the $1 fee was directed to the "County Law Library Fund" and "available to be used for certain costs and expenses in acquiring, maintaining and operating a law library available to the judges of the courts and to the attorneys of litigants." *Id.* The court held that the fee constituted an unconstitutional tax, not a legitimate court cost, because it was "neither necessary nor incidental to the trial of a criminal case." *Id.* at 127, 130. The court cautioned that to hold otherwise,

> would lead into fields of expenditures which may as well include the cost of the court houses, the automobiles which officers use to apprehend criminals and even the roads upon which they ride. If something so remote as a law library may be properly charged to the litigant on the theory that it better prepares the courts and the attorneys for the performance of their duties, it occurs to us that we might as logically tax an item of cost for the education of such attorneys and judges and even the endowments of the schools which they attend.

*Id.* at 127.

Appellant, likening the "DNA Record Fee" to the law library fee in *Carson,* first asserts that the

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

portion of the "DNA Record Fee" dedicated to the state highway fund "is used ... [to] provide services that are neither necessary nor incidental to the trial of a criminal case."

By law, "[m]oney that is required to be used for public roadways by the Texas Constitution or federal law and that is deposited in the state treasury to the credit of the *state highway fund,* ... may be used only: (1) to improve the state highway system; (2) to mitigate adverse environmental effects that result directly from construction or maintenance of a state highway by the department; or (3) by the Department of Public Safety to police the state highway system and to administer state laws relating to traffic and safety on public roads." Tex. Transp. Code Ann. § 222.001(a) (Vernon 2011) (emphasis added). Section 222.002 supplements this instruction and provides that "[m]oney in the *state highway fund* that is not required to be spent for public roadways by the Texas Constitution or federal law may be used for any function performed by the department." *Id.* § 222.002 (Vernon 2011) (emphasis added). "[T]he department" referenced in section 222.002 is the Texas Department of Transportation ("TxDOT"). *Id.* § 201.001(a)(2) (Vernon Supp.2014); *see also* State v. Montgomery Cnty., 338 S.W.3d 49, 56 (Tex.App.–Beaumont 2011, pet. denied) (noting " '[d]epartment' means the Department of Transportation").

**\*6** Here, the "DNA Record Fee" revenue dedicated to the state highway fund does not constitute money that is required, by either the Texas Constitution or federal law, to be used for public roadways. *See* Tex. Code Crim. Proc. Ann. art. 102.020(a)(1); Tex. Transp. Code Ann. § 222.001(a). Therefore, pursuant to section 222.002, such money may be used for *any function of TxDOT. See* Tex. Transp. Code Ann. §§ 201,001, 222.002.

The stated mission of TxDOT is to "[w]ork with others to provide safe and reliable transportation solutions for Texas."[5] *Inside TxDOT: Mission, Goals and Values,* Tex. Dep't Transp., http://www.txdot.gov/inside-txdot/contact-us/mission.html (last visited Dec. 16, 2014); *see also* Glenn

T. Hasler, *Dangerous Distractions: The Problematic Use of Wireless Communication Devices While Driving,* 12 Tex. Tech. Admin. L.J. 155, 168 (2010) ("TxDOT's purpose is to facilitate effective movement throughout the state by providing safe, efficient transportation systems."); Kyle R. Baum, Comment, *Rollin' on Down the Rail: Can Texas Lead the Nation in Developing Efficient High–Speed Rail this Time Around?,* 45 Tex. Tech. L.Rev. Online 1, 2 (2013) (TxDOT's "core mission is to 'provide safe and efficient movement of people and goods, enhance economic viability and improve the quality of life for people that travel in the state of Texas by maintaining existing roadways and collaborating with private and local entities to plan, design, build and maintain expanded transportation infrastructure' ").

TxDOT is divided into twenty-two divisions, ranging from aviation to maritime to public transportation and rail, which are tasked with handling the responsibilities of the department. *See* Tex. Transp. Code Ann. § 201.202(a) (Vernon Supp.2014) ("The commission shall organize the department into divisions to accomplish the department's functions ... including divisions for: (1) aviation; (2) highways and roads; and (3) public transportation."); *Inside TxDOT: Divisions,* Tex. Dep't Transp., http://www.txdot.gov/inside-txdot/division.html (last visited Dec. 16, 2014) ("From rail crossings to right of way, traffic cameras to travel maps, and bridge inspections to bid opportunities, TxDOT's divisions handle a diverse range of services for the agency.").

TxDOT is responsible for developing a statewide transportation plan for addressing all modes of transportation, including highways and turnpikes, aviation, mass transportation, railroads, high-speed railroads, and water traffic. *See* Tex. Transp. Code Ann. § 201.601(a) (Vernon Supp.2014); *Robbins v. Limestone Cnty.,* 114 Tex. 345, 268 S.W. 915, 920 (1925) (agency created to "formulate and execute plans and policies for the location, construction and maintenance of a comprehensive system of state highways and public roads"); *see also* Tex. Transp. Code Ann. §§ 201.6011–622 (Vernon 2011 & Supp.2014) (listing plans and projects of TxDOT);

Brian K. Carroll, *The Road Goes on Forever and the Claims Process Never Ends: An Approach for Success in Handling Texas Department of Transportation Construction Claims,* 13 Tex. Tech. Admin. L.J. 233, 234 (2012) ("The projects range from small landscaping and guardrail projects to major interchanges.... TxDOT also supervises the construction of buildings for rest areas, area engineer's offices, district offices, visitor's centers, and other special purpose buildings....").

**\*7** The court in *Carson,* which constitutes binding precedent on this Court,[6] held that fees which are "neither necessary nor incidental to the trial of a criminal case" are not legitimate courts costs that may be assessed against a defendant. 159 S.W.2d at 127, 130. As discussed above, the responsibilities of TxDOT, which under the Code of Criminal Procedure is entitled to use thirty-five percent of the revenue collected by the "DNA Record Fee," do not relate to the trial of a criminal case. Instead, the responsibilities of TxDOT are far more remote from a criminal trial than the county law libraries which were to be used by the judges and attorneys for trial preparation in *Carson.* Thus, it cannot be reasonably concluded that the portion of the revenue collected through the "DNA Record Fee" and dedicated to the state highway fund constitutes a proper court cost to be assessed against appellant or any other criminal defendant.

Accordingly, we hold that the portions of articles 102.020(a)(1) and 102.020(h) requiring the collection of the "DNA Record Fee" from appellant to be dedicated the state highway fund constitute an unconstitutional tax. *See Carson,* 159 S.W.2d at 127, 130. *But see O'Bannon v. State,* 435 S.W.3d 378, 380–82 (Tex.App.–Houston [14th Dist.] 2014, no pet.).

We note that our dissenting colleague would not hold that the portion of the "DNA Record Fee" revenue dedicated to the state highway fund is an unconstitutional tax. In doing so, he relies on Texas Government Code section 411.145(c), which provides that "[a] fee collected under this section

shall be deposited in the state treasury to the credit of the state highway fund, and money deposited to the state highway fund under this section and under Articles 42.12 and 102.020(h), Code of Criminal Procedure, may be used only to defray the cost of administering [chapter 411, subchapter G] and Section 411.0205." Tex. Gov't Code Ann. § 411.145(c) (Vernon 2012); *see also id.* § 411.0205 (Vernon Supp.2014) (crime laboratory accreditation process). Because "[s]ubchapter G governs the collection and management of DNA samples, including [a]ppellant's, by [the Texas Department of Public Safety ("DPS") ]" and "[s]ection 411.0205 regulates the accreditation of forensic crime laboratories by DPS," our dissenting colleague concludes that "the portion of the DNA Record Fee credited to the state highway fund is used to defray the costs associated with collecting, storing, and testing DNA samples" and, thus, "paying for DNA sampling and crime-lab accreditation is a valid, constitutional use of the DNA Record Fee under *Carson.*"

In reaching his conclusion, however, our dissenting colleague fails to consider the entire breadth of subchapter G. For instance, the "DNA Database" provided for in chapter 411, subchapter G is used for a wide variety of purposes, including "assisting in the recovery or identification of human remains from a disaster or for humanitarian purposes," "assisting in the identification of living or deceased missing persons," "establishing a population statistics database," "assisting in identification research, forensic validation studies, or forensic protocol development," and "retesting to validate or update the original analysis or assisting in database or DNA laboratory quality control." *Id.* § 411.143(c) (Vernon 2012). And the database contains DNA records from a whole host of individuals, such as "an unidentified missing person or unidentified skeletal remains or body parts," "a close biological relative of a person who has been reported missing," and "a person at risk of becoming lost, such as a child or a person declared ... mentally incapacitated." *Id.* § 411.142(g) (Vernon 2012). Notably, none of the above statutory purposes or the individual records in the DNA

Database relate to appellant's criminal trial, despite the fact that thirty-five percent of the revenue collected via the "DNA Record Fee" may be utilized by DPS to "defray the cost of administering" chapter 411, subchapter G.[7] *See id.* § 411.145(c).

**\*8** The Texas Court of Criminal Appeals has clearly favored a strict definition of what constitutes a legitimate court cost that may be assessed against a criminal defendant. *See Carson,* 159 S.W.2d at 127; *see also Salinas v. State,* 426 S.W.3d 318, 329–30 (Tex.App.–Houston [14th Dist.] 2014, no pet.) (Jamison, J., dissenting) (explaining *Carson* constitutes binding precedent and "the *Carson* Court clearly favored a strict definition of permissible 'court costs' in a criminal case"). And the revenue collected via the "DNA Record Fee" to be used by DPS for anything covered by chapter 411, subchapter G, or for crime laboratory accreditation under Government Code section 411.0205, is not closely enough related to appellant's criminal trial to be considered constitutional.

Appellant, again relying on *Carson,* next asserts that the portion of the "DNA Record Fee" dedicated to the general revenue fund of the criminal justice planning account also constitutes an unconstitutional tax.

The criminal justice planning account is administered by the Criminal Justice Division ("CJD") of the Governor's Office. *See* Tex. Gov't Code Ann. § 772.006(a)(2) (Vernon 2012). Appellant asserts that the CJD's "mission is to create and support programs that protect people from crime, reduce the number of crimes committed, and to promote accountability, efficiency, and effectiveness within the criminal justice system." He notes that it "focuses on the enhancement of Texas'[s] capacity to prevent crime, provide service and treatment options, enforce laws, train staff and volunteers, and the restoration of crime victims to full physical, emotional and mental health." Appellant argues that because "the courts [are] never mentioned" as part of the CJD's mission or focus, the revenue collected via the "DNA Record Fee" is not

used by the CJD for services that are necessary or incidental to the trial of a criminal case.

The Texas Government Code reveals that the CJD was established to:

(1) advise and assist the governor in developing policies, plans, programs, and proposed legislation for improving the coordination, administration, and effectiveness of the criminal justice system;

(2) administer the criminal justice planning fund;

(3) prepare a state comprehensive criminal justice plan, to update the plan annually based on an analysis of the state's criminal justice problems and needs, and to encourage identical or substantially similar local and regional comprehensive criminal justice planning efforts;

(4) establish goals, priorities, and standards for programs and projects to improve the administration of justice and the efficiency of law enforcement, the judicial system, prosecution, criminal defense, and adult and juvenile corrections and rehabilitation;

(5) award grants to state agencies, units of local government, school districts, and private, nonprofit corporations from the criminal justice planning fund for programs and projects on consideration of the goals, priorities, and standards recommended by the Criminal Justice Policy Council;

(6) apply for, obtain, and allocate for the purposes of this section any federal or other funds which may be made available for programs and projects that address the goals, priorities, and standards established in local and regional comprehensive criminal justice planning efforts or assist those efforts;

(7) administer the funds provided by this section in such a manner as to ensure that grants received

under this section do not supplant state or local funds;

(8) monitor and evaluate programs and projects funded under this section, cooperate with and render technical assistance to state agencies and local governments seeking to reduce crime or enhance the performance and operation of the criminal justice system, and collect from any state or local government entity information, data, statistics, or other material necessary to carry out the purposes of this section;

**\*9** (9) submit a biennial report to the legislature reporting the division's activities during the preceding biennium including the comprehensive state criminal justice plans and other studies, evaluations, crime data analyses, reports, or proposed legislation that the governor determines appropriate or the legislature requests; and

(10) perform other duties as necessary to carry out the duties listed in this subsection and adopt rules and procedures as necessary.

*Id.*

In regard to the CJD's administration of the criminal justice planning account, the legislature determines and appropriates the necessary amount of money from the criminal justice planning fund to the CJD. Tex.Code Crim. Proc. Ann. art. 102.056(a) (Vernon Supp.2014). The CJD then uses this money to "[s]upport a wide range of projects designed to reduce crime and improve the criminal and juvenile justice systems."[8] *CJD Funding Sources,* Office of Governor, Criminal Justice Div., 1, http://governor.state.tx.us/ files/cjd/CJD_Funding_Sources.pdf (last visited Dec. 16, 2014); *see also* Tex. Code Crim. Proc. Ann. art. 102.056(a) (money from criminal justice planning fund used by CJD "for state and local criminal justice projects," with not less than twenty percent of such money going to juvenile justice programs); *Financial Services: Grants over $25,000*

*Administered by the Office of the Governor,* Office of Governor, http://governor.state.tx.us/financial-services/grants/ (last visited Dec. 16, 2014) (grants from criminal justice planning fund "support a wide range of projects designed to reduce crime and improve the criminal [and] juvenile justice systems"); *Helpful Questions and Answers for Managing Grants,* Office of Governor, Criminal Justice Div., B–12 (Feb.2014), http://governor.state.tx.us/ files/cjd/CJD_Guide_to_Grants_v7.pdf (same).

Numerous entities are eligible to apply for grants from the criminal justice planning fund, including "[s]tate agencies, units of local government, independent school districts, nonprofit corporations, Native American tribes, COGs, universities, colleges, hospital districts, juvenile boards, regional education service centers, community supervision and corrections departments, crime control and prevention districts, and faith-based organizations." *CJD Funding Sources, supra,* at 1; *see also* Tex. Gov't Code Ann. § 772.006(a)(5) (CJD awards grants from criminal justice planning fund "to state agencies, units of local government, school districts, and private, nonprofit corporations"); Press Release, Office of Governor, Gov. Perry Awards $195,000 From State Criminal Justice Planning Funds (Jan. 28, 2008), http:// governor.state.tx.us/news/press-release/5133/ (grant recipients from criminal justice planning fund "include local units of government, independent school districts, non-profit corporations, hospitals, universities, colleges, community supervision and corrections departments, law enforcement agencies and councils of governments").

**\*10** Moreover, the CJD has awarded money from the fund to a variety of recipients, such as the Alamo Area Council of Governments for Regional Police Training Academy, the Bastrop County Women's Shelter for SAINT: Sexual Assault Integrated Nursing Team, Fort Bend County for the "Saved by the Bell" Delinquency Reduction Program, the Katy Christian Ministries for Counseling Services for Victims of Domestic Violence, and The Family

Place for S.T.A.R.T. (Students Tackling Abusive Relationships Together). *See, e.g.,* Press Release, Office of Governor Tex., Gov. Perry Awards $8 Million in Grants to Improve Criminal Justice Systems (Sept. 10, 2008), http:// governor.state.tx.us/news/press-release/11114/ (listing seventy-nine recipients that received more than $8 million in grants from criminal justice planning fund); Press Release, Office of the Governor of Tex., Gov. Perry Awards $195,000 From State Criminal Justice Planning Fund, *supra* (stating more than $195,000 in grants from criminal justice planning fund awarded to Wood County for Wood County Rural Prosecutor Project and BeyondMissing Inc. for Texas Amber Alert Network); Press Release, Office of Governor, Governor Rick Perry Announces Statewide Grant to Reduce School Dropouts (Nov. 7, 2001), http:// governor.state.tx.us/ news/press-release/4229/ (announcing $168,146 criminal justice planning fund grant to Behavioral Health Institute of Waco to assist with "efforts to reduce school failure, dropout rates, and juvenile crime"); *see also Helpful Questions and Answers for Managing Grants, supra,* at B–12 (listing activities eligible for grants from criminal justice planning fund, such as job training, professional therapy and counseling, school based delinquency prevention, substance abuse, and peer support groups).

With this background in mind, we turn to the propriety of the portion of the revenue collected via the "DNA Record Fee" dedicated to the criminal justice planning account and to be used by the CJD. As the Texas Court of Criminal Appeals explained in *Carson,* adopting a less than strict definition of what constitutes a legitimate court cost "would lead into fields of expenditures which may as well include the cost of the court houses, the automobiles which officers use to apprehend criminals and even the roads upon which they ride." 159 S.W.2d at 127.

Here, sixty-five percent of the revenue received through the "DNA Record Fee" is dedicated by law to the general revenue fund of the criminal justice planning account in order to "[s]upport a wide range of projects designed to reduce crime and improve the

criminal and juvenile justice systems." *See CJD Funding Sources, supra,* at 1. The recipients of money from the criminal justice planning fund are vastly diverse and range from state agencies to schools to hospitals and faith-based organizations. Notably, the money from the criminal justice planning fund is not required to be directed to the courts or to services necessarily or incidentally related to criminal trials. And often times such revenue is given to programs that, as the court in *Carson* specifically noted, could not possibly relate to legitimate court costs. *See* 159 S.W.2d at 127 (costs for training and education not legitimate court costs that may be assessed against criminal defendants). Accordingly, we cannot conclude that the criminal justice planning account, which is funded by the "DNA Record Fee," passes constitutional muster. *See Salinas,* 426 S.W.3d at 330–31 (Jamison, J., dissenting) (concluding court costs assessed pursuant to Texas Local Government Code section 133.102, which directs approximately thirteen percent of its revenue to the criminal justice planning fund, unconstitutional).

The State argues that appellant has not shown that the "DNA Record Fee" is unconstitutional because it "is a one-time fee of $250" and "is certainly applicable to appellant, as he was court-ordered to provide a DNA specimen in both sexual assault cases." The State asserts that the "DNA Record Fee" was ordered "to reimburse the State for expenses incurred as a result of the felony prosecution [of appellant], specifically costs spent to obtain DNA specimens in certain cases." And "[s]ince this statutory assessment is reasonably related to the costs of administering the criminal justice system, appellant has failed to show how the statute authorizing this court cost is unconstitutional."

DPS is required to collect a DNA specimen from persons convicted of certain crimes, including aggravated sexual assault of a child less than fourteen years of age, and maintain a database that includes, among others, these DNA specimens. *See* Tex. Gov't Code Ann. § 411.142 (directing DPS to maintain "computerized database that serves as the

central depository in the state for DNA records"); *id.* § 411.1471 (Vernon 2012) (requiring collection of DNA specimen from those convicted of certain crimes). As asserted by the State, funds from the criminal justice planning account may be used by the CJD to reimburse DPS and other law enforcement agencies for expenses incurred in performing duties required by Texas Government Code section 411.1471, namely the taking of a DNA specimen from a defendant, preserving of the specimen, and maintaining a collection of the specimen. *See* Tex.Code Crim. Proc. Ann. art. 102.056(e); Tex. Gov't Code Ann. § 411.1471.

**\*11** Notably though, reimbursement for expenses related to the collection and maintenance of DNA specimens is not automatic or guaranteed under Texas Code of Criminal Procedure article 102.056(e); the statute only provides that DPS will be reimbursed with funds from the criminal justice planning account after it complies with certain procedures. *See* Tex. Code Crim. Proc. Ann. art. 102.056(e) (law enforcement agency, incurring expenses in previous calendar quarter, must, on first day after end of calendar quarter, send certified statement of costs incurred to CJD). Thus, although appellant provided a DNA specimen to DPS in accordance with section 411.1471 in conjunction with his cases, it cannot be assumed that DPS was automatically reimbursed by virtue of the "DNA Record Fee" for any expenses associated with the collection of his specimen.

Further, we note that even if we presume that some of the revenue collected pursuant to the "DNA Record Fee" is actually used to reimburse DPS or other law enforcement agencies for collecting DNA specimens from criminal defendants, preserving such specimens, and maintaining a record of such collections, it is readily apparent that this is not the only way in which the revenue is used. Sixty-five percent of the revenue collected through the "DNA Record Fee" is dedicated to the general revenue fund of the criminal justice planning account. As outlined above, money in the criminal justice planning fund is given to a vast number of diverse entities, almost

of none of which have any relation to the collection of a defendant's DNA specimen or a criminal trial. *See, e.g.,* Tex. Code Crim. Proc. Ann. art. 102.056(a) (money from criminal justice planning fund is used for "state and local criminal justice projects," with not less than twenty percent of such funds directed to juvenile justice programs); Tex. Gov't Code Ann. § 772.006(a)(5) (CJD awards grants from criminal justice planning fund "to state agencies, units of local government, school districts, and private, nonprofit corporations"); Press Release, Office of Governor, Gov. Perry Awards $8 Million in Grants to Improve Criminal Justice Systems, *supra* (listing seventy-nine recipients that received more than $8 million in grants from criminal justice planning fund); Press Release, Office of Governor, Gov. Perry Awards $195,000 from State Criminal Justice Planning Funds, *supra* (stating more than $195,000 in grants from criminal justice planning fund awarded to Wood County for Wood County Rural Prosecutor Project and BeyondMissing Inc. for Texas Amber Alert Network); Press Release, Office of Governor, Governor Rick Perry Announces Statewide Grant to Reduce School Dropouts, *supra* (announcing $168,146 criminal justice planning fund grant to Behavioral Health Institute of Waco to assist with "efforts to reduce school failure, dropout rates, and juvenile crime"). Thus, it cannot be reasonably concluded that the revenue dedicated to the criminal justice planning account provides services that are necessary or incidental to the trial of a criminal defendant's case. *See Carson,* 159 S.W.2d at 127, 130; *see also Salinas,* 426 S.W.3d at 332 (Jamison, J., dissenting) ("Although it appears some of the funds that go to the fair defense account may ultimately help provide counsel for indigent criminal defendants, it does not appear that this is the sole use that can be made for these funds.... It therefore cannot be said that either the training fund or the fair defense account are necessary or incidental expenses in the trial of appellant's criminal case.").

Accordingly, we hold that the portions of article 102.020(a)(1) and article 102.020(h) requiring the collection of the "DNA Record Fee" from appellant to be dedicated to the general revenue fund of the

criminal justice planning account constitute an unconstitutional tax. *See Carson,* 159 S.W.2d at 127, 130. *But see O'Bannon,* 435 S.W.3d at 381.

**\*12** We note that our sister court has recently criticized the reasoning of the Texas Court of Criminal Appeals opinion in *Carson* as " 'both abbreviated and bereft of citations to supporting authority.' " *O'Bannon,* 435 S.W.3d at 381 (quoting *Salinas,* 426 S.W.3d at 326). In "[a]ssuming arguendo that *Carson* requires a statute imposing court costs to be 'necessary or incidental to the trial of a criminal case,' " the Fourteenth Court of Appeals held that the defendant's facial constitutional challenge to article 102.020 failed because he did not "establish[ ] how the funds will be used once they are distributed to the state highway fund and the criminal justice planning account." *Id.* at 381–82. It asserted that the defendant merely "infer[ed]" that revenue collected pursuant to article 102.020(a)(1) will "flow 'directly to the executive branch [to be] used for policy purposes' " or to the state highway fund, "not [to] be used for purposes necessary or incidental to DNA collection or testing." *Id.* at 382.

We respectfully disagree with our sister court for the reasons outlined above. In short, we first note that the reasoning of the Texas Court of Criminal Appeals in *Carson* is sound and it constitutes binding precedent upon it and lower courts. *See Reed v. Buck,* 370 S.W.2d 867, 870–71 (Tex.1963) (explaining simply because certain cases had "not been cited in recent years," such "ancient cases" do not "just fade[ ] away"; instead, "unless there is some good reason for overruling them, they should not be disregarded"); *Purchase v. State,* 84 S.W.3d 696, 701 (Tex.App.–Houston [1st Dist.] 2002, pet. ref'd) ("[W]e are bound by the decisions of our state's highest criminal court."). Second, we note that criminal defendants similarly situated to appellant are not asking appellate courts to "infer" how the revenue from the "DNA Record Fee" will be directed. As discussed above, the revenue, by statute, is dedicated by law for expenditures that are far removed from actual "court costs." A plain reading of the pertinent statutes reveals this undeniable fact.

We sustain appellant's third issue.[9]

### Conclusion

Having held that the "DNA Record Fee" assessed against appellant pursuant to article 102.020(a)(1) and article 102.020(h) constitutes an unconstitutional tax, we modify each judgment to delete the $250 charge from the assessed court costs. *See Cates v. State,* 402 S.W.3d 250, 252 (Tex.Crim.App.2013) (holding proper remedy when trial court erroneously includes amounts as court costs is to modify judgment to delete erroneous amounts); *Sturdivant v. State,* 445 S.W.3d 435, 443 (Tex.App.–Houston [1st Dist.] 2014, pet. ref d) (holding trial court erroneously included attorney pro tern fees as court costs and modifying judgment accordingly); *see also* Tex. R. App. P. 43.2(b).

Further, as noted above, having held that there is no basis in the record to support the charge for "serving capias," we also modify each judgment to delete the $50 charge from the assessed court costs. *See French,* 830 S.W.2d at 609 (agreeing "appellate court has authority to reform a [trial court] judgment to ... make the record speak the truth when the matter has been called to its attention by any source"); *Nolan,* 39 S.W.3d at 698 ("An appellate court has the power to correct and reform a trial court judgment 'to make the record speak the truth when it has the necessary data and information to do so ....' " (quoting *Asberry,* 813 S.W.2d at 529)); *see also* Tex. R. App. P. 43.2(b).

**\*13** We affirm the judgment of the trial court as modified.

Harvey Brown, Justice, Concurring and Dissenting

I join with the Court's conclusions that the trial court did not abuse its discretion in denying Appellant's motion to withdraw his guilty pleas and that the judgment should be modified, striking the unsupported "Sheriff's Fee" assessed in both cases. However, I disagree with the Court's conclusion that the "DNA Record Fee"[1] is unconstitutional.

**Facial Challenge to the DNA Record Fee**

Appellant argues that the statute authorizing collection of the fee is facially unconstitutional under the separation-of-powers clause of the Texas Constitution. Tex. Const. art. II, § 1. Under that provision, a statute authorizing a court to collect costs "neither necessary nor incidental to the trial of a criminal case" is not valid. *Ex parte Carson,* 143 Tex.Crim. 498, 159 S.W.2d 126, 127 (1942). Appellant makes only a facial challenge, which requires him to "establish that no set of circumstances exists under which the statute will be valid." *Santikos v. State,* 836 S.W.2d 631, 633 (Tex.Crim.App.1992); *see also State v. Rosseau,* 396 S.W.3d 550, 557 (Tex.Crim.App.2013). In my view, Appellant has not shown that every application of the statue violates the *Carson* standard. I would, therefore, affirm the constitutionality of the fee.

**A. Reviewing a facial challenge**

When reviewing the constitutionality of a statute, "an appellate court must presume that the statute is valid and that the legislature was neither unreasonable nor arbitrary in enacting it." *Curry v. State,* 186 S.W.3d 39, 42 (Tex.App.–Houston [1st Dist.] 2005, no pet.) (citing *Ex parte Granviel,* 561 S.W.2d 503, 511 (Tex.Crim.App.1978)). A reviewing court must make every reasonable presumption in favor of the statute's constitutionality, unless the contrary is clearly shown. *Granviel,* 561 S.W.2d at 511; *see* Tex. Gov't Code Ann. § 311.021 (West 2013) (noting that courts presume "compliance" with Texas and United States Constitutions).

To prevail, the party asserting a facial challenge "must establish that the statute always operates unconstitutionally in all possible circumstances." *Rosseau,* 396 S.W.3d at 557. When construing a statute, courts consider, among other factors, the object sought to be attained by the legislation, laws on the same or similar subjects, and the consequences of a particular construction. Tex. Gov't Code Ann. § 311.023 (West 2013); *see State v. Neesley,* 239 S.W.3d 780, 784 (Tex.Crim.App.2007); *Nguyen v. State,* 1 S.W.3d 694, 696–97 (Tex.Crim.App.1999); *see also Dowthitt v. State,* 931 S.W.2d 244, 258 (Tex.Crim.App.1996). If a statute can be reasonably interpreted in a manner that does not offend the constitution, a reviewing court must overrule a facial challenge to the statute's constitutionality. *Curry,* 186 S.W.3d at 42.

**B. Constitutionality of the DNA Record Fee benefiting the criminal-justice planning account**

**\*14** Appellant argues that the DNA Record Fee unconstitutionally benefits the criminal-justice planning account because the account is "too remote" to be considered a necessary or incidental cost of prosecuting a criminal case as required under *Carson,* 159 S.W.2d at 127 (concluding that law library fee is remote and unconstitutional). The Court agrees and cites several possible uses of money from the criminal-justice planning account that are not related to the prosecution of a criminal case. This approach is contrary to the standard that applies to claims that a statute is facially unconstitutional because (1) it diminishes the challenger's burden to demonstrate that all—not some—applications of a statute are unconstitutional; and (2) it runs afoul of precedent by favoring an unconstitutional reading over a constitutional reading when construing statutes. I would construe the criminal-justice planning account in its statutory context, situated among related statutes, and conclude that Appellant has not demonstrated that all applications of the statute are unconstitutional under the *Carson* standard.

The Department of Public Safety ("DPS") is required to collect a DNA specimen from every person charged with certain categories of crimes, including the crime involved here—aggravated sexual assault of a child under 14 years of age—and to create a database cataloging the DNA specimens. Tex. Gov't Code Ann. § 411.142 (West 2012) (directing DPS to maintain "computerized database that serves as the central depository in the state for DNA records" that is compatible with FBI's national DNA identification index system); *id.* § 411.1471 (West 2012) (requiring collection of DNA specimens from people charged with or convicted of certain crimes, including aggravated sexual assault of child under 14 years of age); Tex. Penal Code Ann. § 22.021 (West Supp.2014) (defining aggravated sexual assault of child under 14 years of age). The criminal-justice planning account allocates funds toward the collection and management of this statewide criminal DNA database. *See* Tex.Code Crim. Proc. Ann. art. 102.056 (West Supp.2014). Specifically, subsection (e) of article 102.056 directs the Legislature to

> determine and appropriate the necessary amount from the criminal justice planning account to the criminal justice division of the governor's office for reimbursement in the form of grants to the Department of Public Safety of the State of Texas and other law enforcement agencies for expenses incurred in performing duties imposed on those agencies under Section 411.1471 or Subchapter B–1, Chapter 420, Government Code, as applicable.

*Id.*

After looking outside the record to press releases and web sites, the Court insists that "it cannot be assumed that DPS was automatically reimbursed by virtue of the 'DNA Record Fee' for any expenses associated with the collection of [Appellant's] sample" and therefore the fee is an unconstitutional tax. This conclusion does not account for the remainder of subsection (e), which continues:

> The criminal justice division through a grant [of money from the criminal-justice planning account] shall reimburse the law enforcement agency for the costs not later than the 30th day after the date the certified statement is received. If the criminal justice division does not reimburse the law enforcement agency before the 90th day after the date the certified statement is received, the agency is not required to perform duties imposed under Section 411.1471 or Subchapter B–1, Chapter 420, Government Code, as applicable, until the agency has been compensated for all costs for which the agency has submitted a certified statement under this subsection.

*Id.* Thus, the Court's skepticism is unjustified given the wording of the statute regarding reimbursement to fund the DNA project.

The Court also insists that, even if DPS were reimbursed, the fee is nevertheless unconstitutional because the criminal-justice planning account funds other unrelated projects. Following this analysis, it would be enough for a party bringing a facial constitutional challenge to show that *some* possible applications of a statute are unconstitutional to justify invalidating every application of that statute. That is the wrong standard. *See Santikos,* 836 S.W.2d at 633 ("[T]he challenger must establish that no set of circumstances exists under which the statute will be valid."). While money from the criminal-justice planning account apparently funds other programs in addition to the DNA database, Appellant presents no evidence that the DNA Record Fee revenue does anything more than reimburse the criminal-justice planning account for its DNA-database expenditures. Appellant appears to concede that reimbursement for these expenditures would not violate *Carson.* I agree.

**\*15** I would hold that collecting the DNA Record Fee to benefit the criminal-justice planning account is constitutional because these funds may be allocated to the statewide criminal DNA database. Because such an allocation would be constitutional, Appellant fails to meet his burden of showing that every application of the statute would result in constitutional injury. *See Rosseau,* 396 S.W.3d at 557 (noting moving party has burden of demonstrating statute's unconstitutionality in "all its possible applications."). Accordingly, I would conclude that Appellant has failed to demonstrate that the portion of the DNA Record Fee that benefits the criminal-justice planning account is an unconstitutional tax.

### C. Constitutionality of the DNA Record Fee benefiting the state highway fund

Likewise, Appellant has not demonstrated that the portion of the DNA Record Fee that benefits the state highway fund is facially invalid. Pursuant to article 102.020(h) of the Texas Code of Criminal Procedure, a portion of collected DNA Record Fee revenue goes into the state highway fund. "[M]oney deposited to the state highway fund under ... 102.020(h), Code of Criminal Procedure, may be used only to defray the cost of administering [subchapter G of chapter 411] and Section 411.0205" of the Texas Government Code. Tex. Gov't Code Ann. § 411.145 (West 2012). Subchapter G governs the collection and management of DNA samples, including Appellant's, by DPS. *See* Tex. Gov't Code Ann. § 411.1471. Section 411.0205 regulates the accreditation of forensic crime laboratories by DPS. Tex. Gov't Code Ann. § 411.0205 (West 2012). Thus, under the Texas Government Code, the portion of the DNA Record Fee credited to the state highway fund is used to defray the costs associated with collecting, storing, and testing DNA samples.

The Court relies on section 222.002 of the Texas Transportation Code, which states that money in the state highway fund not earmarked for public

roadways "*may* be used for any function performed by" the Texas Department of Transportation ("TxDOT"). Tex. Transp. Code Ann. § 222.002 (West 2011) (emphasis added). TxDOT does not manage DNA-sample collection, management, or testing. But TxDOT does not have exclusive access to the state highway fund. Rather, the Transportation Code simply states a general rule that TxDOT "may" access the fund. In contrast, the Government Code provides a specific rule that money from the DNA Record Fee in the state highway fund "may be used *only*" by DPS to defray the cost of administering the DNA database. Tex. Gov't Code Ann. § 411.145 (emphasis added).

When two statutes concern the same issue, the two should be read together as one law, and an appellate court should attempt to harmonize any conflicting provisions. *Garrett v. State,* 424 S.W.3d 624, 629 (Tex.App.–Houston [1st Dist.] 2013, pet. ref d). If this is not possible, specific rules prevail over general provisions, absent contrary legislative intent. *Id.*; *Azeez v. State,* 248 S.W.3d 182, 192 (Tex.Crim.App.2008). In light of these principles, I would hold that the statute specifically assigning DNA Record Fee revenue in the state highway fund to DPS for DNA sampling and crime-lab accreditation prevails over the general statute relied upon by the Court.

I would further hold that paying for DNA sampling and crime-lab accreditation is a valid, constitutional use of the DNA Record Fee under *Carson.* The trial court ordered Appellant to surrender a DNA sample as part of the investigation of this case. The fee is therefore "necessary or incidental" to the trial of Appellant's case. *See generally* Tex. Gov't Code Ann. § 411.143(a) (West 2012) ("The principal purpose of the DNA database is to assist a federal, state, or local criminal justice agency in the investigation or prosecution of sex-related offenses or other offenses in which biological evidence is recovered.").

**\*16** The Court concludes that the fee is an unconstitutional tax because the revenue could possibly benefit other activities unrelated to the statewide DNA database. In doing so, the Court again relies on web sites outside the record because Appellant has provided no record evidence of how the funds are expended and relieves Appellant of his burden when bringing a facial constitutional challenge.

Because Appellant has not demonstrated that every application of the statutes assigning DNA Record Fee revenue to the state highway fund would be unconstitutional, I would conclude that Appellant did not demonstrate that the portion of the DNA Record Fee that benefits the state highway fund is facially unconstitutional.

### Conclusion

Having determined that both portions of the DNA Record Fee—the 65% that benefits the criminal-justice planning account and the 35% that benefits the state highway fund—are sufficiently related to the prosecution of a criminal case, I would conclude that Appellant failed to satisfy his burden of demonstrating that the DNA Record Fee is facially unconstitutional. Accordingly, I respectfully dissent.

Footnotes

1    *See* Tex. Penal Code Ann. § 22.021 (Vernon Supp.2014).

2    *See* Tex. Code Crim. Proc. Ann. art. 102.011(a)(2) (Vernon Supp.2014) (imposing $50 charge "for executing or processing an issued arrest warrant, capias, or capias pro fine").

3    *See id.* art. 102.011(a)(1) (imposing $5 charge for arrest without warrant).

4    *See* Tex. Code Crim. Proc. Ann. art. 102.020(a)(1) (Vernon Supp.2014) (authorizing collection of $250 fee from persons convicted of offenses listed in Texas Government Code section 411.1471(a)(1)). We refer to the fee assessed pursuant to article 102.020(a)(1) as a "DNA Record Fee" because it is so labeled in the trial court clerk's bill of costs in each case.

5    Although our dissenting colleague calls into question the reliance on information available through the Texas Department of Transportation's website, we note that this Court and others have repeatedly taken judicial notice of information available on various websites, including governmental websites. *See* Tex. R. Evid. 201; *see, e.g., Payan v. State,* 199 S.W.3d 380, 383 & n. 4 (Tex.App.–Houston [1st Dist.] 2006, pet. ref'd) (taking judicial notice of information available on "[t]he State Library and Archives Commission website"); *see also Chen v. Hernandez,* No. 03–11–00222–CV, 2012 WL 3793294, at *14 (Tex. App.–Austin Aug. 28, 2012, pet. denied) (mem. op.) (noting trial court took judicial notice of "government websites," including "website for the U.S. Department of State"); *Hayden v. State,* 155 S.W.3d 640, 647 (Tex.App.–Eastland 2005, pet. ref'd) (taking judicial notice of information available on "website of the United States Naval Observatory").

6    *See Reed v. Buck,* 370 S.W.2d 867, 870–71 (Tex.1963) (explaining simply because certain cases had "not been cited in recent years," such "ancient cases" do not "just fade[ ] away"; instead, "unless there is some good reason for overruling them, they should not be disregarded"); *Purchase v. State,* 84 S.W.3d 696, 701 (Tex.App.–Houston [1st Dist.] 2002, pet. ref'd) ("[W]e are bound by the decisions of our state's highest criminal court.").

7    We also note that under chapter 411, subchapter G, the DPS director is assigned numerous responsibilities, including "develop[ing] biennial plans" to "improve the reporting and accuracy of the DNA [D]atabase," "audit[ing] the records, reports, procedures, or other quality assurance matters of any DNA laboratory," and providing "training for collection of DNA samples," none of which are responsibilities that are "necessary [or] incidental to the trial of a criminal case." *See* Tex. Gov't Code Ann. §§ 411.142(e), 411.144(c), 411.146(b) (Vernon 2012); *Ex Parte Carson,* 143 Tex.Crim. 498, 159 S.W.2d 126, 127, 130 (1942) (discounting notion funds for training constitute legitimate court costs).

8    We again note that our dissenting colleague calls into question the reliance on information available through the website of the Office of the Governor. However, as stated previously, this Court and others have repeatedly taken judicial notice of information available on various websites, including governmental websites. *See* Tex. R. Evid. 201; *see, e.g., Payan,* 199 S.W.3d at 383 & n. 4; *see also Chen,* 2012 WL 3793294, at *14; *Hayden,* 155 S.W.3d at 647.

9    In his fourth issue, appellant argues that the trial court erred in not granting him a hearing on his motions for new trial and in arrest of judgment because "[t]o properly challenge the constitutionality of the DNA fees and the faulty Sheriff's fee, a hearing was necessary." Appellant filed his motions in the trial court asserting that "[t]he fees from the Sheriff reflected on the bill[s] of costs are wholly unsupported and erroneous" and "[t]he DNA court costs are unconstitutional." Given our disposition of appellant's second and third issues, we do not reach the issue of whether the trial court erred in not granting appellant a hearing on his motions for new trial and in arrest of judgment. *See* Tex. R. App. P. 47.1.

1    *See* Tex. Code Crim. Proc. Ann. art. 102.020(a)(1) (West Supp.2014) ("A person shall pay as a cost of court: (1) $250 on conviction of an offense listed in Section 411.1471(a)(1), Government Code").

---

**End of Document**          © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 7530437

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.
CONCURRING & DISSENTING OPINION

Court of Appeals of Texas,
Houston (1st Dist.

Osmin Peraza, Appellant
v.
The State of Texas, Appellee
NO. 01–12–00690–CR, NO. 01–12–00691–CR |
Opinion issued December 30, 2014

On Appeal from the 184th District Court, Harris County, Texas, Trial Court Case Nos. 1305438 and 1305439.
Panel consists of Justices Jennings, Sharp, and Brown.

**CONCURRING & DISSENTING OPINION**

Harvey Brown, Justice

I join with the Court's conclusions that the trial court did not abuse its discretion in denying Appellant's motion to withdraw his guilty pleas and that the judgment should be modified, striking the unsupported "Sheriff's Fee" assessed in both cases. However, I disagree with the Court's conclusion that the "DNA Record Fee"[1] is unconstitutional.

**Facial Challenge to the DNA Record Fee**

Appellant argues that the statute authorizing collection of the fee is facially unconstitutional under the separation-of-powers clause of the Texas Constitution. Tex. Const. art. II, § 1. Under that provision, a statute authorizing a court to collect costs "neither necessary nor incidental to the trial of a criminal case" is not valid. *Ex parte Carson,* 159 S.W.2d 126, 127 (Tex.Crim.App.1942). Appellant makes only a facial challenge, which requires him to "establish that no set of circumstances exists under which the statute will be valid." *Santikos v. State,* 836 S.W.2d 631, 633 (Tex.Crim.App.1992); *see also State v. Rosseau,* 396 S.W.3d 550, 557 (Tex.Crim.App.2013). In my view, Appellant has not shown that every application of the statue violates the *Carson* standard. I would, therefore, affirm the constitutionality of the fee.

**A. Reviewing a facial challenge**
When reviewing the constitutionality of a statute, "an appellate court must presume that the statute is valid and that the legislature was neither unreasonable nor arbitrary in enacting it." *Curry v. State,* 186 S.W.3d 39, 42 (Tex. App.–Houston [1st Dist.] 2005, no pet.) (citing *Ex parte Granviel,* 561 S.W.2d 503, 511 (Tex. Crim. App. 1978)). A reviewing court must make every reasonable presumption in favor of the statute's constitutionality, unless the contrary is clearly shown. *Granviel,* 561 S.W.2d at 511; *see* Tex. Gov't Code Ann.. § 311.021 (West 2013) (noting that courts presume "compliance" with Texas and United States Constitutions).

To prevail, the party asserting a facial challenge "must establish that the statute always operates unconstitutionally in all possible circumstances." *Rosseau,* 396 S.W.3d at 557. When construing a statute, courts consider, among other factors, the object sought to be attained by the legislation, laws on the same or similar subjects, and the consequences of a particular construction. Tex. Gov't Code Ann. § 311.023 (West 2013); *see State v. Neesley,* 239 S.W.3d 780, 784 (Tex.Crim.App.2007); *Nguyen v. State,* 1 S.W.3d 694, 696–97 (Tex. Crim. App. 1999); *see also Dowthitt v. State,* 931 S.W.2d 244, 258 (Tex. Crim. App. 1996). If a statute can be reasonably interpreted in a manner that does not offend the constitution, a reviewing court must overrule a facial challenge to the statute's constitutionality. *Curry,* 186 S.W.3d at 42.

**B. Constitutionality of the DNA Record Fee benefiting the criminal-justice planning account**

Appellant argues that the DNA Record Fee unconstitutionally benefits the criminal-justice planning account because the account is "too remote" to be considered a necessary or incidental cost of prosecuting a criminal case as required under *Carson,* 159 S.W.2d at 127 (concluding that law library fee is remote and unconstitutional). The Court agrees and cites several possible uses of money from the criminal-justice planning account that are not related to the prosecution of a criminal case. This approach is contrary to the standard that applies to claims that a statute is facially unconstitutional because (1) it diminishes the challenger's burden to demonstrate that all—not some—applications of a statute are unconstitutional; and (2) it runs afoul of precedent by favoring an unconstitutional reading over a constitutional reading when construing statutes. I would construe the criminal-justice planning account in its statutory context, situated among related statutes, and conclude that Appellant has not demonstrated that all applications of the statute are unconstitutional under the *Carson* standard.

The Department of Public Safety ("DPS") is required to collect a DNA specimen from every person charged with certain categories of crimes, including the crime involved here—aggravated sexual assault of a child under 14 years of age—and to create a database cataloging the DNA specimens. Tex. Gov't Code Ann. § 411.142 (West 2012) (directing DPS to maintain "computerized database that serves as the central depository in the state for DNA records" that is compatible with FBI's national DNA identification index system); *id.* § 411.1471 (West 2012) (requiring collection of DNA specimens from people charged with or convicted of certain crimes, including aggravated sexual assault of child under 14 years of age); Tex. Penal Code Ann. § 22.021 (West Supp.2014) (defining aggravated sexual assault of child under 14 years of age). The criminal-justice planning account allocates funds toward the collection and management of this statewide criminal DNA database. *See* Tex.Code Crim. Proc. Ann.. art. 102.056 (West Supp.2014). Specifically, subsection (e) of article 102.056 directs the Legislature to

determine and appropriate the necessary amount from the criminal justice planning account to the criminal justice

division of the governor's office for reimbursement in the form of grants to the Department of Public Safety of the State of Texas and other law enforcement agencies for expenses incurred in performing duties imposed on those agencies under Section 411.1471 or Subchapter B–1, Chapter 420, Government Code, as applicable.

*Id.*

After looking outside the record to press releases and web sites, the Court insists that "it cannot be assumed that DPS was automatically reimbursed by virtue of the 'DNA Record Fee' for any expenses associated with the collection of [Appellant's] sample" and therefore the fee is an unconstitutional tax. This conclusion does not account for the remainder of subsection (e), which continues:

The criminal justice division through a grant [of money from the criminal-justice planning account] shall reimburse the law enforcement agency for the costs not later than the 30th day after the date the certified statement is received. If the criminal justice division does not reimburse the law enforcement agency before the 90th day after the date the certified statement is received, the agency is not required to perform duties imposed under Section 411.1471 or Subchapter B–1, Chapter 420, Government Code, as applicable, until the agency has been compensated for all costs for which the agency has submitted a certified statement under this subsection.

*Id.* Thus, the Court's skepticism is unjustified given the wording of the statute regarding reimbursement to fund the DNA project.

The Court also insists that, even if DPS were reimbursed, the fee is nevertheless unconstitutional because the criminal-justice planning account funds other unrelated projects. Following this analysis, it would be enough for a party bringing a facial constitutional challenge to show that *some* possible applications of a statute are unconstitutional to justify invalidating every application of that statute. That is the wrong standard. *See Santikos,* 836 S.W.2d at 633 ("[T]he

challenger must establish that no set of circumstances exists under which the statute will be valid."). While money from the criminal-justice planning account apparently funds other programs in addition to the DNA database, Appellant presents no evidence that the DNA Record Fee revenue does anything more than reimburse the criminal-justice planning account for its DNA-database expenditures. Appellant appears to concede that reimbursement for these expenditures would not violate *Carson.* I agree.

I would hold that collecting the DNA Record Fee to benefit the criminal-justice planning account is constitutional because these funds may be allocated to the statewide criminal DNA database. Because such an allocation would be constitutional, Appellant fails to meet his burden of showing that every application of the statute would result in constitutional injury. *See Rosseau,* 396 S.W.3d at 557 (noting moving party has burden of demonstrating statute's unconstitutionality in "all its possible applications."). Accordingly, I would conclude that Appellant has failed to demonstrate that the portion of the DNA Record Fee that benefits the criminal-justice planning account is an unconstitutional tax.

**C. Constitutionality of the DNA Record Fee benefiting the state highway fund**

Likewise, Appellant has not demonstrated that the portion of the DNA Record Fee that benefits the state highway fund is facially invalid. Pursuant to article 102.020(h) of the Texas Code of Criminal Procedure, a portion of collected DNA Record Fee revenue goes into the state highway fund. "[M]oney deposited to the state highway fund under ... 102.020(h), Code of Criminal Procedure, may be used only to defray the cost of administering [subchapter G of chapter 411] and Section 411.0205" of the Texas Government Code. Tex. Gov't Code Ann. § 411.145 (West 2012). Subchapter G governs the collection and management of DNA samples, including Appellant's, by DPS. *See* Tex. Gov't Code Ann.. § 411.1471. Section 411.0205 regulates the accreditation of forensic crime laboratories by DPS. Tex. Gov't Code Ann. § 411.0205 (West 2012). Thus, under the Texas Government Code, the portion of the DNA Record Fee credited to the state highway fund is used to defray the costs associated with collecting, storing, and testing DNA samples.

The Court relies on section 222.002 of the Texas Transportation Code, which states that money in the state highway fund not earmarked for public roadways "*may* be used for any function performed by" the Texas Department of Transportation ("TxDOT"). Tex. Transp. Code Ann. § 222.002 (West 2011) (emphasis added). TxDOT does not manage DNA-sample collection, management, or testing. But TxDOT does not have exclusive access to the state highway fund. Rather, the Transportation Code simply states a general rule that TxDOT "may" access the fund. In contrast, the Government Code provides a specific rule that money from the DNA Record Fee in the state highway fund "may be used *only* " by DPS to defray the cost of administering the DNA database.Tex. Gov't Code Ann. § 411.145 (emphasis added).

When two statutes concern the same issue, the two should be read together as one law, and an appellate court should attempt to harmonize any conflicting provisions. *Garrett v. State,* 424 S.W.3d 624, 629 (Tex.App.—Houston [1st Dist.] 2013, pet. ref'd). If this is not possible, specific rules prevail over general provisions, absent contrary legislative intent. *Id.*; *Azeez v. State,* 248 S.W.3d 182, 192 (Tex.Crim.App.2008). In light of these principles, I would hold that the statute specifically assigning DNA Record Fee revenue in the state highway fund to DPS for DNA sampling and crime-lab accreditation prevails over the general statute relied upon by the Court.

I would further hold that paying for DNA sampling and crime-lab accreditation is a valid, constitutional use of the DNA Record Fee under *Carson.* The trial court ordered Appellant to surrender a DNA sample as part of the investigation of this case. The fee is therefore "necessary or incidental" to the trial of Appellant's case. *See generally* Tex. Gov't Code Ann. § 411.143(a) (West 2012) ("The principal purpose of the DNA database is to assist a federal, state, or local criminal justice agency in the investigation or prosecution of sex-related offenses or other offenses in which biological evidence is recovered.").

The Court concludes that the fee is an unconstitutional tax because the revenue could possibly benefit other activities unrelated to the statewide DNA database. In doing so, the Court again relies on web sites outside the record because

Appellant has provided no record evidence of how the funds are expended and relieves Appellant of his burden when bringing a facial constitutional challenge.

Because Appellant has not demonstrated that every application of the statutes assigning DNA Record Fee revenue to the state highway fund would be unconstitutional, I would conclude that Appellant did not demonstrate that the portion of the DNA Record Fee that benefits the state highway fund is facially unconstitutional.

**Conclusion**

Having determined that both portions of the DNA Record Fee—the 65% that benefits the criminal-justice planning account and the 35% that benefits the state highway fund—are sufficiently related to the prosecution of a criminal case, I would conclude that Appellant failed to satisfy his burden of demonstrating that the DNA Record Fee is facially unconstitutional. Accordingly, I respectfully dissent.

Justice Brown, concurring in part and dissenting in part.

Footnotes

| 1 | *See* Tex.Code Crim. Proc. Ann.. art. 102.020(a)(1) (West Supp.2014) ("A person shall pay as a cost of court: (1) $250 on conviction of an offense listed in Section 411.1471(a)(1), Government Code"). |